# United States Court of Appeals for the Federal Circuit

2007-1094

UNITED STATES TSUBAKI, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Brian F. Walsh, Barnes, Richardson & Colburn, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was Christine H. Martinez.

Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Acting Attorney General and James A. Curley, Attorney. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs and Border Protection.

Appealed from: United States Court of International Trade

Senior Judge Richard W. Goldberg

# United States Court of Appeals for the Federal Circuit

2007-1094

UNITED STATES TSUBAKI, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 01-00519, Senior Judge Richard W. Goldberg.

_____

DECIDED:  January 9, 2008

_____

Before BRYSON, Circuit Judge, CLEVENGER, Senior Circuit Judge, and LINN, Circuit Judge.

BRYSON, Circuit Judge.

Between December 1979 and July 1983, United States Tsubaki, Inc., imported 56 entries of roller chains into this country from Japan.  Tsubaki asserted that the merchandise was entitled to enter duty-free, so it made no cash deposit for the merchandise at the time of entry.  The entries, however, were subject to an antidumping order.  In order to determine whether any antidumping duties were owed for those entries, the Department of Commerce conducted administrative reviews for two periods: December 1, 1979, through March 31, 1981, ("the first period") and April 1, 1981, through September 1, 1983, ("the second period").  Liquidation of the entries was

suspended pending the final results of those administrative reviews. The results of the first and second reviews were published in the Federal Register on December 4, 1986, and May 8, 1987, respectively. Roller Chain, Other than Bicycle from Japan; Final Results of Antidumping Duty Administrative Review, 51 Fed. Reg. 43,755 (Dec. 4, 1986); Roller Chain, Other than Bicycle from Japan; Final Results of Antidumping Duty Administrative Review, 52 Fed. Reg. 17,425 (May 8, 1987). The weighted average final dumping margins were 0.07% for the entries in the first review period and 0.18% to 0.36% for the entries in the second review period. The issuance of the final results had the effect of lifting the suspension of liquidation; the publication of the final results in the Federal Register had the effect of giving notice to the Customs Service that suspension of liquidation had been lifted. See Int'l Trading Co. v. United States, 412 F. 3d 1303, 1307-09 (Fed. Cir. 2005); Int'l Trading Co. v. United States, 281 F.3d 1268, 1277 (Fed. Cir. 2002).

Although the antidumping determinations became final in 1986 and 1987, Commerce did not issue liquidation instructions to Customs for the two groups of entries at that time. In fact, Customs did not liquidate the two groups of entries until October 2000 and February 2001. Tsubaki protested the liquidations at that time, contending that the entries were all deemed liquidated by operation of law under 19 U.S.C. § 1504(d) at the rate of duty Tsubaki had declared at the time of entry, which was 0%. After Customs denied the protest, Tsubaki filed this action in the Court of International Trade.

In a thorough opinion, the Court of International Trade held that 51 of the 56 entries were not deemed liquidated and were therefore subject to assessed duties.

U.S. Tsubaki, Inc. v. United States, 461 F. Supp. 2d 1339 (Ct. Int'l Trade 2006).  The government conceded that the remaining five entries were deemed liquidated at the 0% duty rate.  Tsubaki has appealed from the disposition of the 51 contested entries.

I

As a general matter, if an entry is not liquidated within one year from the date of entry, it is deemed liquidated by operation of law at the rate of duty declared by the importer at the time of entry.  19 U.S.C. § 1504(a).  That rule does not apply, however, when liquidation has been suspended either by operation of statute or by court order.  Such cases are governed by 19 U.S.C. § 1504(d).  The version of section 1504(d) that was in effect between 1984 and 1993 provided as follows:

> Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, unless liquidation continues to be suspended as required by statute or court order.  When such a suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom.

19 U.S.C. § 1504(d) (1988).  Under that statute, if liquidation was suspended for four years after the date of entry and the suspension was then removed, Customs was directed to liquidate the entry within 90 days thereafter.  However, because the statutory command was interpreted as directory and not mandatory, the upshot was that deemed liquidation did not occur in any case in which liquidation was suspended for four years or more.  See Am. Permac, Inc. v. United States, 191 F.3d 1380, 1382 (Fed. Cir. 1999); Canadian Fur Trappers Corp. v. United States, 884 F.2d 563, 566 (Fed. Cir. 1989); Koyo Corp. of U.S.A. v. United States, 403 F. Supp. 2d 1305, 1308 (Ct. Int'l Trade 2005).

In 1993, Congress amended section 1504(d). The amended version extended the period of time for liquidating entries after the lifting of suspension of liquidation from 90 days to six months, but it made deemed liquidation mandatory in all cases if liquidation was not effected within that six-month period. 19 U.S.C. § 1504(d) (1994). The new statute provided as follows, in pertinent part:

> [W]hen a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry . . . within 6 months after receiving notice of the removal from the Department of Commerce . . . . Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

This case turns on which version of section 1504(d) applies to the entries at issue. If the pre-1993 version applies, there would be no deemed liquidation, despite the extraordinary delay between the lifting of the suspension of liquidation in 1986 and 1987 and the ultimate liquidation of the entries in 2000 and 2001. If the 1993 version of section 1504(d) applies, however, the entries would be deemed liquidated, since the entries were not liquidated within six months of the lifting of the suspension of liquidation.

II

In order to determine which version of section 1504(d) applies, we must determine what event triggers the statute's application. Tsubaki argues that the trigger for applying section 1504(d) is the liquidation of the entries in 2000 and 2001. Because those triggering acts occurred after the enactment of the 1993 version of section 1504(d), Tsubaki argues, the 1993 version of the statute applies. To support that argument, Tsubaki relies on this court's decision in Travenol Laboratories, Inc. v. United

<u>States</u>, 118 F.3d 749 (Fed. Cir. 1997), which concerned the appropriate trigger for 19 U.S.C. § 1505(c), the statute that governs the payment of interest on liquidated entries. <u>Travenol</u> held that the triggering act for the statutory obligation to pay interest on the overpayment of liquidated duties is the act of liquidation or reliquidation.

<u>Travenol</u>, which dealt with the accrual of interest, not the suspension of liquidation, has no application to the issue presented in this case. In <u>Travenol</u>, we noted that "Customs does not determine whether there has been an overpayment or underpayment of estimated duties until it liquidates or reliquidates an entry." Because liquidation or reliquidation determines whether the importer has overpaid the applicable duties, we held that liquidation or reliquidation is the appropriate triggering event for the statutory liability for interest on those payments. <u>Travenol</u>, 118 F.3d at 753. In this case, by contrast, the 1993 version of section 1504(d) identifies notice to Customs of the lifting of the suspension of liquidation as the critical act that imposes the burden of prompt liquidation on the government. Therefore, notice to Customs of the act of lifting the suspension of liquidation is the correct trigger for the application of 19 U.S.C. § 1504(d). Because that act occurred prior to 1993 with respect to both groups of entries, the pre-1993 version of section 1504(d) applies unless congressional intent or the governing principles of retroactivity dictate that the 1993 version of section 1504(d) should be given retroactive effect.

In addressing this issue, we do not write on a clean slate. As the trial court noted, this court has already held that the 1993 version of section 1504(d) should not be applied to cases in which suspension of liquidation was lifted and notice to Customs of the lifting of suspension occurred prior to the effective date of the 1993 amendment.

See Am. Permac, Inc. v. United States, 191 F.3d 1380 (Fed. Cir. 1999). Our analysis in that case controls here.

In American Permac, the importer made three entries of machines that were subject to an antidumping administrative review. The entries were suspended from liquidation pending final resolution of the review. Commerce published the final results of the review, which the importer challenged in the Court of International Trade. During that court's review, liquidation continued to be suspended. In August 1989, the Court of International Trade affirmed the final results. Suspension of liquidation was removed at that time, and notice of the lifting of the suspension was given to Customs through publication in the Federal Register. See Am. Permac, 191 F.3d at 1381; Drycleaning Machinery from West Germany; Final Results of Antidumping Duty Administrative Review in Accordance with Decision upon Remand, 54 Fed. Reg. 35,363 (Aug. 25, 1989). In October 1989, Commerce instructed Customs to liquidate the entries and to assess antidumping duties in accordance with the court's determination. Liquidation of the entries did not occur, however, until April 1994.

Applying the 1993 version of section 1504(d), the Court of International Trade held that the entries in American Permac were deemed liquidated at the duty rate asserted by the importer at the time of entry. Am. Permac, Inc. v. United States, 984 F. Supp. 621 (Ct. Int'l Trade 1997). This court, however, reversed, holding that to apply the 1993 version of section 1504(d) would give that statute "an impermissible retroactive effect because it attaches new legal consequences to events completed before the statute was enacted." Am. Permac, 191 F.3d at 1381. Because the triggering events for deemed liquidation under section 1504(d) occurred prior to the effective date of the

1993 statute, and because the court concluded that "there is no expression of congressional intent, either in the statutory language or legislative history of section 1504(d), that retroactive effect is contemplated," the court held that the case was governed by the pre-1993 version of section 1504(d).  Id.

Tsubaki has not pointed to any material difference between this case and American Permac.  In American Permac, the lifting of the suspension of liquidation and the accompanying notice to Customs of the lifting of suspension occurred after a court challenge to the final results, whereas in this case, the lifting of the suspension of liquidation and the accompanying notice to Customs of the lifting of suspension occurred at the time the final results were announced (as there was no court challenge to the final results).  That distinction, however, makes no difference.  In American Permac, as here, the critical facts—the lifting of the suspension of liquidation and the notice to Customs of the lifting of suspension—occurred prior to the effective date of the 1993 Act.  For that reason, the court in American Permac held that the pre-1993 version of section 1504(d) governs, and we are bound by that governing precedent to reach the same result.[1]

_____

[1]    One difference between this case and American Permac is that in this case the liquidations occurred more than six months after the enactment of the 1993 amendment to section 1504(d), while in American Permac the liquidation occurred less than six months after the enactment of the statute.  Thus, the six-month period specified in the 1993 statute would not have run at the time the entries in American Permac were liquidated if that period were deemed to have begun running for pre-existing "suspended liquidation" entries on the statute's effective date.  Tsubaki does not argue that that distinction makes a difference, however, and we therefore do not address whether the 1993 version of the statute could be applied to such entries that remained unliquidated six months after the enactment of the 1993 statute without giving that statute an impermissibly retroactive effect.

Tsubaki argues that the portion of the decision in American Permac that addresses the triggering event for section 1504(d) is dictum, that we are not bound by that decision, and that we should instead follow the decision of the Court of International Trade in American International Chemical, Inc. v. United States, 387 F. Supp. 2d 1258 (Ct. Int'l Trade 2005). Contrary to Tsubaki's contention, we do not regard as dictum the statement of this court in American Permac that the lifting of the suspension of liquidation is the triggering event for the running of the time period for liquidation under section 1504(d). Because the publication in the Federal Register that effects the lifting of the suspension of liquidation also constitutes notice to Customs that suspension of liquidation has been removed, see Int'l Trading Co., 281 F.3d at 1277, the court's reference in American Permac to the lifting of the suspension of liquidation encompassed both acts. What is important about this court's decision in American Permac, and what governs the disposition of this case, is the court's determination that because the triggering acts for section 1504(d) occurred prior to the effective date of the 1993 amendment to that statute, the 1993 amendment could not be applied to the events of that case without giving the 1993 amendment impermissible retroactive effect. In this case, the triggering events clearly occurred prior to the enactment of the 1993 amendment to section 1504(d). The lifting of the suspension of liquidation and the concomitant notice to Customs occurred with the publication of the final results of the administrative reviews in 1986 and 1987. The square holding of American Permac is that, in a case in which the triggering events for the application of section 1504(d) occurred before the enactment of the 1993 amendment, the 1993 amendment does not apply. Following that ruling, as we must, we hold that the 1993 version of section

1504(d) does not apply in this case because the lifting of the suspension of liquidation and the notice to Customs of the lifting of the suspension of liquidation occurred long before the effective date of the amendment.

Although we are bound by the prior decision of this court in American Permac, and not by the decision of the Court of International Trade in the American International Chemical case, we note that American International Chemical is distinguishable from both American Permac and this case, and it would not provide support for Tsubaki's claim even if we were to follow it. In American Permac, as in this case, the lifting of the suspension of liquidation and the notice to Customs of the lifting of the suspension both occurred prior to the effective date of the 1993 statute. In American International Chemical, by contrast, although Commerce was required to publish notice of the final judgment of the court following a challenge to the administrative review of the subject entries, which would have given Customs notice of the removal of the suspension of liquidation, Commerce failed to do so. 387 F. Supp. 2d at 1261. Instead, the court found that notice to Customs did not occur until years later, after the 1993 version of section 1504(d) had gone into effect. For that reason, the court concluded that applying the 1993 statute to the entries in question would not have an impermissible retroactive effect. Because of that factual difference between the cases, the decision in American International Chemical would not require a different result in this case even if we followed that decision.

Tsubaki makes the further argument that the liquidations in 2000 and 2001 occurred in response to a purported June 9, 2000, email message from Commerce to Customs inquiring about the status of the entries. For that reason, Tsubaki argues, the

June 9, 2000, email message should be regarded as the trigger for section 1504(d). The trial court found it unnecessary to address the circumstances surrounding the alleged email message. We also find the alleged email message irrelevant to the proper resolution of the legal issue in this case. Tsubaki contends that even though the lifting of the suspension of liquidation and the original notice to Customs occurred in 1986 and 1987, the June 9, 2000, email message constituted a second notice to Customs. For that reason, Tsubaki argues, the statutory obligation to liquidate the entries should have been triggered by that second notice and should have expired six months after that date. We disagree. Even assuming that such an email message was sent in June 2000 and that it constituted a request to Customs to liquidate the entries, the events that triggered the application of the section 1504(d) obligation to liquidate had already occurred long before, and the issuance of a new message to Customs therefore did not constitute the "notice of the removal" of suspension of liquidation referred to in the statute. We therefore sustain the ruling of the trial court rejecting Tsubaki's claim with respect to the 51 contested entries.

<u>AFFIRMED</u>.