Opinion for the court filed by Circuit Judge LINN.
Dissenting opinion filed by Circuit Judge REYNA.
LINN, Circuit Judge.
Hitachi Home Electronics (America), Inc. (“Hitachi”) appeals from the Court of International Trade’s dismissal for lack of jurisdiction of its action seeking duty-free treatment of certain plasma flat panel televisions made or assembled in Mexico and imported into the United States and seeking recovery of tariffs paid thereon. Because the Court of International Trade correctly determined that it lacked jurisdiction, this court affirms.
I. BackgRound
Hitachi imported certain plasma flat panel televisions made or assembled in Mexico between June 1, 2003, and December 27, 2005. Hitachi Home Elecs. (America), Inc. v. United States, 704 F.Supp.2d 1315, 1315-16 (CIT 2010). These televisions were liquidated as dutiable under subheading 8528.12.72 of the Harmonized Tariff Schedule of the United States at a rate of 5.0% ad valorem. Id. at 1316. Hitachi claims that the televisions should be treated as duty-free under the North American Free Trade Agreement. Id. Hitachi filed numerous protests with United States Customs and Border Protection (“Customs”), followed by actions in the Court of International Trade. Id. at 1316-17.
On March 6, 2007, Hitachi filed its protest as to tariffs paid on televisions imported between November 19 and December 27, 2005. Id. at 1317. In May 2009, Hitachi filed an action in the Court of International Trade asserting jurisdiction under 28 U.S.C. § 1581(a). Id. Hitachi contended that its protest was denied or deemed denied under 19 U.S.C. § 1515(a) because Customs had taken more than two years to act on its protest, or under 28 U.S.C. § 1581(i) if there was no jurisdiction under § 1581(a). Id. Customs moved to dismiss for lack of jurisdiction and Hitachi cross-moved to consolidate that case with other pending cases and for summary judgment. Id. at 1317-18. Hitachi then argued that jurisdiction was proper under § 1581® and that Hitachi was entitled to recover the amounts protested because Hitachi’s protests were allowed by operation of law *1345 when Customs failed to act within the two-year period required by § 1515(a). Id.
The Court of International Trade dismissed for lack of jurisdiction, interpreting § 1515(a) to impose neither automatic allowance nor automatic denial of a protest, and concluding that jurisdiction was therefore not proper under § 1581(a) or (i). Id. at 1319-22. The Court of International Trade noted that all Hitachi needed to do in order to establish jurisdiction was to file for accelerated disposition under 19 U.S.C. § 1515(b) and wait for a maximum of thirty days. Id. at 1320.
Hitachi timely appealed the dismissal and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).
II. Discussion
A.Standard of Review
This court reviews the Court of International Trade’s decision to dismiss for lack of jurisdiction de novo. Xerox Corp. v. United States, 423 F.3d 1356, 1359 (Fed.Cir.2005). The Court of International Trade based its decision on its interpretation of 19 U.S.C. §§ 1514 and 1515 and 28 U.S.C. § 1581, which interpretation this court also reviews de novo. Id. at 1359; Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed.Cir.1995).
B.Possible Statutory Bases for Jurisdiction
Two provisions of 28 U.S.C. § 1581 are relevant to Hitachi’s claim to jurisdiction in the Court of International Trade. Section 1581(a) provides (emphasis added): “The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under § 515 of the Tariff Act of 1930.” This section is the basis of what now appears to be Hitachi’s alternative argument for jurisdiction, which we address briefly after addressing Hitachi’s main argument. More relevant to Hitachi’s appeal is § 1581(i), a catchall jurisdictional clause which provides in relevant part:
[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for ... tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue....
Hitachi’s appeal turns on the question of whether, if Customs fails to allow or deny a protest within the two-year period provided by 19 U.S.C. § 1515(a), the protest is deemed allowed by operation of law and Customs’ power to act on the protest is expired, and whether § 1581® therefore provides jurisdiction for Hitachi to recover the duties subject to the protest.
C.Allowance by “Operation of Law”
While this court has not previously decided whether § 1515(a) causes all claims not denied within the two-year period to be allowed by operation of law, we do so now with ample guidance from the Supreme Court and our own precedent. For the reasons discussed below, we hold that it does not, and that Hitachi therefore failed to establish jurisdiction under § 1581®.
1. Time Limits, Mandatory and Directory
The Supreme Court has “long recognized that many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them ... do not limit their power or render its exercise in disregard of the requisitions ineffectual.” United States v. James Daniel Good Real Prop., 510 U.S. 43, 63, 114 *1346 S.Ct. 492, 126 L.Ed.2d 490 (1993) (quotation omitted). Thus, “if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.” Id. In James Daniel Good, the Supreme Court explained that “the failure of Congress to specify a consequence for noncompliance with the timing requirements [of the statute at issue] implies that Congress intended the responsible officials ... to have discretion to determine what disciplinary measures are appropriate when their subordinates fail to discharge their statutory duties.” Id. at 64-65, 114 S.Ct. 492.
In Brock v. Pierce County, 476 U.S. 253, 266, 260, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), in holding that the Comprehensive Employment and Training Act’s “requirement that the Secretary ‘shall’ take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time,” the Supreme Court observed that “[w]hen, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.” See also Barnhart v. Peabody Coal Co., 537 U.S. 149, 158, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003) (“Nor, since Brock, have we ever construed a provision that the Government ‘shall’ act within a specified time, without more, as a jurisdictional limit precluding action later.” (emphasis added)); Regions Hosp. v. Shalala, 522 U.S. 448, 459 n. 3, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998) (where statute contained “shall report” provision and Secretary “[m]iss[ed] the deadline by some years,” the “failure to meet the deadline, a not uncommon occurrence when heavy loads are thrust on administrators, [did] not mean that official lacked power to act beyond it”).
In United States v. Montalvo-Murillo, 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990), the Supreme Court interpreted a provision of the Bail Reform Act that reads, in relevant part:
DETENTION HEARING. — The judicial officer shall hold a hearing to determine whether any condition or combination of conditions ... will reasonably assure the appearance of such person
The hearing shall be held immediately upon the person’s first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance....
Id. at 714, 110 S.Ct. 2072. In MontalvoMurillo, “[t]he sole question presented on certiorari [was] whether ... [the detainee] must be released as a remedy for the failure to hold a hearing at his first appearance.” Id. at 716, 110 S.Ct. 2072. Applying Brock, the Supreme Court held that “the word ‘shall’ in the Act’s hearing time requirement does not operate to bar all authority to seek pretrial detention once the time limit has passed. Although the duty is mandatory, the sanction for breach is not loss of all later powers to act.” Id. at 718, 110 S.Ct. 2072. As the Supreme Court further explained:
There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent ... [and w]e do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits.
Id. at 717, 721,110 S.Ct. 2072.
By contrast, 18 U.S.C. § 3162(a)(2) is a statute that actually states a consequence for failure to comply with a time limit: “If *1347 a defendant is not brought to trial within the time limit required ... the information or indictment shall be dismissed on motion of the defendant.” The Supreme Court has confirmed that “[t]he sanction for a violation of the [Speedy Trial] Act is dismissal .... ” Zedner v. United States, 547 U.S. 489, 509, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006). Thus, the Supreme Court has amply distinguished between statutes that impose consequences and statutes that do not.
And this court has consistently followed Supreme Court precedent in deciding whether particular statutes impose consequences for failure to comply with statuto-
ry time limits. In Canadian Fur Trappers Corp. v. United States, 884 F.2d 563 (Fed.Cir.1989), Customs failed to liquidate
certain entries within a 90-day period, established by 19 U.S.C. § 1504(d), following the lifting of a suspension of liquidation. Id. at 566. The parties argued that “once [Customs] fails to complete the liquidation within the 90 day period, the articles must be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer.” Id. (emphasis added). This court observed that “[w]hile Congress included the operative language ‘deemed liquidated’ in [other parts of § 1504], no such consequential language appears in the [relevant section and ... ] the lack of consequential language ... if [Customs] does not meet that time frame leads us to conclude that Congress intended this part ... to be only directory.” Id.; see also U.S. Tsubaki, Inc. v. United States, 512 F.3d 1332, 1334 (Fed.Cir.2008) (same); Am. Permac, Inc. v. United States, 191 F.3d 1380, 1382 (Fed. Cir.1999) (same).
In Liesegang v. Sec’y of Veterans Affairs, 312 F.3d 1368 (Fed.Cir.2002), this court surveyed precedent including James Daniel Good, Montalvo-Murillo, and Brock, and stated that “[o]ur own precedent has faithfully applied this rule of law as formulated by the Supreme Court ... that, ‘even in the face of a statutory timing directive, when a statute does not specify the consequences of non-compliance, courts should not assume that Congress intended that the agency lose its power to act.’ ” Id. at 1376-77 (quoting Kemira Fibres Oy v. United States, 61 F.3d 866, 871 (Fed.Cir.1995)); see also Gilda Indus., Inc. v. United States, 622 F.3d 1358, 1365 (Fed.Cir.2010) (“[A]bsence of a consequence [in the statute] indicates ... that [the relevant subsection] is a directory provision and not ‘mandatory.’ ”).
This court therefore addresses the present question respecting § 1515(a) in view of the great weight of precedent that when Congress intends there to be consequences for noncompliance with statutory deadlines for government action, it says so expressly-[1]
2. No Automatic Allowance Under 19 U.S.C. § 1515(a)
i. The Plain Terms of Section 1515(a)
Hitachi argues that its protest was allowed by operation of law when Customs failed to allow or deny it within the statutory time limit of two years. According to Hitachi, “the plain meaning of the statute is that any protest not expressly denied by *1348 Customs within two years is allowed by Customs.” Appellant Br. 11 (capitalization removed).
19 U.S.C. § 1515(a) provides in relevant part (emphases added):
Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid.... Notice of the denial of any protest shall be mailed ... [and] shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest. ...
According to Hitachi, the use of the phrase “shall allow or deny” in § 1515(a) means that in the absence of any express denial, a protest is automatically allowed after two years have passed.
Nothing in the language of § 1515(a) supports Hitachi’s position. While the statute contains the word “shall,” all of the cases discussed above make clear that this is not enough to impose a specific penalty for noncompliance. There is no statement of any consequence in the event that Customs does not act.
Hitachi’s argument is premised on the view that the same statutory language which establishes that Commerce must act within two years also establishes the consequence of inaction because § 1515(a) “does not offer Customs the option of permitting the protest to go undecided.” Appellant Br. 12. But this argument, if true, would mean that there is no such thing as a directory provision because every expired statutory time limit would be deemed to have been satisfied “by operation of law.”
Hitachi attempts to avoid the precedent cited above by arguing that “allow” does not require any action by Customs because “allow” can simply mean to permit to happen by doing nothing. Hitachi supports this position by arguing that § 1515(a) specifically establishes that denials require Customs to give formal notice whereas allowances do not require Customs to do anything. But the statute says “allow or deny” with no indication that either result is caused by inaction. Moreover, § 1515(a) actually contains two distinct and parallel statements of what Customs is required to do in the event that it allows or denies a protest respectively: give back excess money if it allows the protest or explain its reasons if it denies the protest. Both of these requirements are equally predicated on Customs having affirmatively done something: to wit, allow or deny a protest. 19 U.S.C. § 1515(a). Hitachi’s “allow means do nothing” argument is therefore unhelpful.
Moreover, § 1515(a) requires the refund of money “found to have been assessed or collected in excess” (emphasis added). Thus the statute predicates allowance on an affirmative finding of excessive payment. Hitachi’s rule, it appears, would require this court to adopt a further rule that § 1515(a) allows for Customs to find excessive payment “by operation of law.” We decline to adopt such a rule.
ii. Relevance of Section 1515(b)
Hitachi’s reading of § 1515(a) is further rebutted by the following subsection, 1515(b), which provides (emphases added):
*1349 A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed ... anytime concurrent with or following the filing of such protest. For purposes of section 1581 of Title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing ... of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.
The related regulation, 19 C.F.R. § 174.22(d), provides (emphases added):
If the port director fails to allow or deny a protest which is the subject of a request for accelerated disposition within 30 days from the date of mailing of such request, the protest shall be deemed to have been denied at the close of the 30th day following such date of mailing.
Section 1515(b) disproves Hitachi’s reading of § 1515(a). First, it shows an example of a specific time limit (thirty days) with a specific consequence (deemed denial). And it does so in the very next subsection following that into which Hitachi wishes to read a consequence that is not there. Thus, it is not necessary to guess about how Congress would have written an express consequence into § 1515 because that is exactly what Congress did. Second, § 1515(b) establishes that a protest can be denied, at least for jurisdictional purposes, by inaction and without any notice.
Also, § 1515(b) defeats Hitachi’s argument by proving that Congress actually did provide a specific remedy, at the option of the importer, to obtain jurisdiction a mere thirty days after filing its protest and any other time it wishes after that. Moreover, the specific remedy that Congress intended to provide, which it did expressly, was not a deemed allowance but a deemed denial — which casts an especially ironic light on Hitachi’s argument that subsections 1515(a) and (b) must be interpreted “in pari materia.” Appellant Br. 19.
Hitachi next argues that using § 1515(b) to obtain jurisdiction under § 1581(a) does not provide an adequate remedy because § 1515(b) is no longer available after the two-year period has expired. For at least the following reasons, Hitachi’s argument is wrong.
First, Hitachi’s view that expiry of the two-year period eliminates the § 1515(b) option contradicts the plain language of that provision, which expressly states that the option is available “any time concurrent with or following the filing of [a] protest” (emphasis added).
Second, the supposed expiry of § 1515(b) is premised on Hitachi’s claim that § 1515(a) automatically allows all pending protests after two years and deprives Customs of the power to act on them: “[0]nce the protest is two or more years old there is nothing left to ‘accelerate.’ ” Appellant Br. 20. Hitachi’s argument thus appears to be that § 1515(a) must automatically allow protests after two years because § 1515(b) no longer applies after two years because § 1515(a) automatically allows protests after two years. The circularity of Hitachi’s reasoning is self-evident.
iii. Legislative History
Hitachi also argues that the legislative history supports its reading of § 1515(a). Hitachi relies heavily upon the fact that Congress rejected the Government’s proposal for deemed denial to be the express consequence of a two-year delay. Hitachi cites a number of passages from the legislative history that support the (undisputed) view that Customs is required to act within two years, and that § 1515(b) safeguards *1350 access to judicial review. But none of this speaks directly to whether § 1515(b) is available after two years have elapsed, or to whether there is a consequence when Customs fails to meet the required deadline.
Thus, Hitachi’s legislative history argument is essentially just that the removal of the proposed constructive-denial provision in favor of an express notice requirement, along with the absence of a formal notice of allowance requirement, must mean that Congress intended protests to be deemed allowed after two years. Hitachi’s reading of the legislative history stands or falls with its reading of the statute itself, and is contrary to the precedent discussed above. If Congress intended, in abandoning one automatic provision, to adopt another opposite automatic provision, it would presumably have mentioned its intent somewhere in the legislative history, to say nothing of the statute itself.
Hitachi has identified nothing in the legislative history to compel reading “deemed allowance” into § 1515(a) — whose plain terms lack any such consequence — and this court therefore declines to do so.[2]
iv. No Automatic Allowance and No Section 1581® Jurisdiction
Hitachi asks this court to ignore the weight of precedent, the plain language of the statute, and the conspicuous absence of any expression of Congressional intent to create an implied automatic allowance provision. We hold that Customs’ failure to act on a protest within the two-year period specified in 19 U.S.C. § 1515(a) does not result in a deemed allowance by operation of law.
Hitachi’s primary argument that jurisdiction is proper under § 1581® is premised on the conclusion that § 1515(a) has already allowed Hitachi’s protest by operation of law. Section 1581® only provides jurisdiction in cases where the other provisions of § 1581 do not provide jurisdiction. See Miller & Co. v. United States, 824 F.2d 961, 963 (Fed.Cir.1987) (“Section 1581® jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.”). Because Hitachi’s claim had not already been allowed or denied, Hitachi could have sought accelerated disposition at any time, waited thirty days, and established jurisdiction under § 1581(a). Therefore jurisdiction under § 1581(a) is not “manifestly inadequate” and jurisdiction under § 1581® is improper. The Court of International Trade correctly found that it lacked jurisdiction under § 1581®.
D. No Other Basis for Jurisdiction
Hitachi argues that if its protest was not allowed by operation of law, then it is nevertheless entitled to jurisdiction under § 1581(a) or (i) because otherwise it will be *1351 deprived of its right to judicial review due to Customs’ refusal to act. This argument ignores the remedy available to Hitachi under § 1515(b) and is therefore without merit.
III. Conclusion
For the foregoing reasons, the Court of International Trade’s dismissal for lack of jurisdiction is affirmed.
AFFIRMED

. The dissent argues that the cited cases involving directory time limits do not apply because of the shorter time limits they address. But these cases do not establish that long time limits are mandatory and short time limits are directory. Nor is there anything in any of these cases from which to infer such a conclusion simply because of the coincidence of the relatively short time periods involved. To the contrary, what the cases do make clear is that courts should not assume that Congress intended there to be a consequence when the statute does not expressly so state.

. The dissent relies heavily on the legislative history to the same end as Hitachi. First, the statute unambiguously lacks any "deemed allowance” provision. And "we need not resort to legislative history when a statute is unambiguous.” Pequignot v. Solo Cup Co., 608 F.3d 1356, 1361-62 (Fed.Cir.2010). Moreover, the dissent cites no passage in all the legislative history that can be fairly read as a statement of Congressional intent to treat stale claims as allowed by operation of law. Rather, the dissent argues convincingly what is not in dispute: that Congress's adoption of the current statute was a rejection of automatic denial. The dissent’s argument appears to be predicated on an unstated and false premise that Congress had only two choices — automatic denial and automatic allowance — and that if Congress rejected one, it necessarily adopted the other. In reality, Congress faced no such dilemma.