# In the United States Court of Federal Claims

No. 07-889V

(Filed: May 3, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| **DOUG PALUCK and RHONDA PALUCK, as parents and natural guardians on behalf of their minor son, KARL PALUCK,** | ) ) ) ) ) ) | Vaccine case; petitioners' challenge to a special master's failure to act on a remanded vaccine case within the statutorily specified time; 42 U.S.C. § 300aa-12(e)(2)(C); absence of mandatory remedy; analogy to a request for relief by way of a writ of mandamus |
| **Petitioners,** | ) ) | |
| **v.** | ) ) | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) | |
| **Respondent.** | ) ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sheila A. Bjorklund, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota, for petitioners.

Chrysovalantis P. Kefalas, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With him on the briefs were Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Rupa Bhattacharyya, Director, Vincent J. Matanoski, Deputy Director, and Catharine E. Reeves, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Judge.

Petitioners Doug and Rhonda Paluck, on behalf of their son, Karl Paluck, seek modification of this court's decision rendered April 18, 2012, remanding this case to a special master pursuant to the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, § 311, 100 Stat. 3743, 3755-84 (1986) (codified as amended at 42 U.S.C. §§ 300aa-1 to -34) ("Vaccine Act"). The Palucks contend that the special master assigned to the case has exceeded the time period allotted for action on a remand under the Vaccine Act, and ask this court to make

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B ("Vaccine Rules"), Rule 18(b), this opinion and order is initially filed under seal. By rule, the parties are afforded fourteen days in which to propose redactions.

its own findings of fact and issue a decision on entitlement in their favor.  The government argues that this court's statutory power to review action by a special master has not been properly invoked because the special master has not issued a decision on remand, and, alternatively, that the remand time period set forth in the Vaccine Act is not mandatory.  The petitioners' motion for review, filed January 30, 2013, has been fully briefed, and a hearing was held on April 10, 2013.

## BACKGROUND

The petitioners filed this action under the Vaccine Act on December 21, 2007.  The special master assigned to the case denied petitioners' claim for compensation on December 14, 2011. *Paluck v. Secretary of Health & Human Servs.*, No. 07-889V, 2011 WL 6949326 (Fed. Cl. Spec. Mstr. Dec. 14, 2011) ("*Paluck I*").  Upon review of that denial, by a decision rendered April 18, 2012, this court vacated and remanded the special master's decision, while "ma[king] no affirmative findings of its own." *Paluck v. Secretary of Health & Human Servs.*, 104 Fed. Cl. 457, 484 (2012) ("*Paluck II*").

On remand, the parties opted not to present additional testimony.  Supplemental briefing was completed by September 19, 2012. *See* Pet'rs' Mot. for Review by the Ct. of Fed. Claims Because Remand Period Has Expired ("Pet'rs' Mot.") at 2, ECF No. 140; Resp't's Mem. in Resp. to Pet'rs' Mot. for Review ("Resp't's Opp'n") at 4, ECF No. 141; Hr'g Tr. 9:2 to 10:7, 24:5 to 25:25 (Apr. 10, 2013).  A decision by the special master has not yet been issued.  Petitioners contend that this delay violates 42 U.S.C. § 300aa-12(e)(2)(C), which specifies that "[t]he court may allow not more than 90 days for [such] remands," and they argue that the delay requires this court to make its own findings of fact and issue a decision on entitlement pursuant to Subparagraph 300aa-12(e)(2)(B). *See* Pet'rs' Mot. at 3.  That provision states that "the United States Court of Federal Claims shall have jurisdiction to undertake a review . . . and may . . . set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2).

## JURISDICTION

Subsection 12(a) of the Vaccine Act bestows upon this court "jurisdiction over proceedings to determine if a petitioner . . . is entitled to compensation under the [National Childhood Vaccine Injury Compensation] Program and the amount of such compensation.  The United States Court of Federal Claims may issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded." 42 U.S.C. § 300aa-12(a). Subparagraph 12(d)(3)(A) specifically grants this court jurisdiction to review "decision[s] of the special master[s]" with respect to the availability and amount of compensation due to petitioners under the Vaccine Act. 42 U.S.C. § 300aa–12(d)(3)(A); *see also Shaw v. Secretary of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).  In this instance, because the special master previously issued a decision denying petitioners' claim for compensation, this court's jurisdiction was invoked by a properly filed petition to review that denial.  The court's

action in vacating and remanding the case to the special master did not thereafter remove or elide this court's jurisdiction, contrary to the government's suggestion. *See* Resp't's Opp'n at 4-8.

In support of its jurisdictional position, the government cites several decisions by judges of this court that refused to entertain petitions for review of interlocutory decisions by special masters. In *Weiss v. Secretary of Dep't of Health & Human Servs.*, 59 Fed. Cl. 624 (2004), the court refused to take jurisdiction over an interim order of a special master that dismissed one of petitioners' three theories of causation. Similarly, in *Spratling v. Secretary of Dep't of Health & Human Servs.*, 37 Fed. Cl. 202 (1997), the petitioner sought review of an order by a special master, which included a finding that the evidence was insufficient to establish vaccine causation. The order did not conclude the proceedings but rather provided the petitioner an opportunity to adduce additional evidence. *Id*. at 203. The court held that "the [Vaccine] Act does not provide for interlocutory appeals." *Id*.

Both *Weiss* and *Spratling* are consistent with the principle that this court's jurisdiction under the Vaccine Act attaches upon a petition for review of a special master's final decision regarding compensation. Both the Vaccine Act and the court's Vaccine Rules provide that pre-compensation proceedings are conducted by a special master, not the court. In pertinent part, 42 U.S.C. § 300aa-12(d) provides:

> (1) *Following the receipt and filing of a petition* under section 300aa-11 of this title, *the clerk* of the United States Court of Federal Claims *shall forward the petition to the chief special master who shall designate a special master to carry out the functions authorized by paragraph (3).*
>
> . . .
>
> (3)(A) *A special master to whom a petition has been assigned shall issue a decision on such petition* with respect to whether compensation is to be provided under the Program and the amount of such compensation. The decision of the special master shall —
>> (i) include findings of fact and conclusions of law, and
>> (ii) be issued as expeditiously as practicable but not later than 240 days, exclusive of suspended time under subparagraph (C), after the date the petition as filed.
>
> *The decision of the special master may be reviewed by the United States Court of Federal Claims in accordance with subsection (e) of this section.*

42 U.S.C. § 300aa-12(d)(1), (3)(A) (emphasis added). Correlatively, Vaccine Rule 3 also assigns special masters the responsibility to conduct proceedings:

> (a)   Case Assignment. After a petition has been filed with the clerk, the chief special master will assign the case to a special master to conduct proceedings in accordance with the Vaccine Rules

(b) Duties. The special master is responsible for:

    (1) conducting all proceedings, including taking such evidence as may be appropriate, making the requisite findings of fact and conclusions of law, preparing a decision, and determining the amount of compensation, if any, to be awarded . . . .

Vaccine Rule 3(a), (b)(1). The *Weiss* and *Spratling* decisions do not, however concern situations in which a special master has issued a final decision, that decision has been reviewed and overturned by a judge of this court, and subsequent actions by special masters are at issue.

Under the court's present practices, the clerk's office does not assign a vaccine case to a judge until a motion for review has been filed. Prior to that point, a vaccine case is assigned only to a special master. *See* Vaccine Rule 26 ("After a motion for review has been filed with the clerk, the case will be assigned to a judge of the Court of Federal Claims pursuant to RCFC 40.1."). Once a vaccine case is assigned to a judge, however, that assigned judge retains the assignment. *See*, *e.g.*, Vaccine Rule 36, relating to relief from a judgment:

    Rule 36. Relief from a Judgment

    (a) In General. If, after the entry of judgment or the issuance of an order concluding proceedings pursuant to Vaccine Rule 10, 21, or 29, a party files a motion for reconsideration pursuant to RCFC 59 or otherwise seeks relief from a judgment or order pursuant to RCFC 60, the clerk will refer the motion as follows:

    (1) *If the petition had previously been assigned to a judge for review pursuant to Vaccine Rule 2[6], the clerk will refer the motion to the assigned judge.*

    (2) If the petition had not previously been assigned to a judge for review pursuant to Vaccine Rule 2[6], the clerk will refer the motion to the assigned special master.

Vaccine Rule 36(a) (emphasis added).[2] Because the assignment to a judge, once made, continues, this court retains jurisdiction over the case notwithstanding the remand and can

---

[2]Before the adoption of Vaccine Rule 36, disparate decisions had been rendered over whether a special master had inherent power to afford relief from a judgment where a petition for review of a final decision had *not* been filed with the court. In *Patton v. Secretary of Dep't of Health & Human Servs.*, 25 F.3d 1021 (Fed. Cir. 1994), the Federal Circuit ruled that the court could entertain a motion for relief from judgment, *id.* at 1029, but that special masters had no authority to correct decisions, absent delegation by the court to exercise such a power, *id.* at 1027; *cf. Vessels v. Secretary of Dep't of Health & Human Servs.*, 65 Fed. Cl. 563 (2005) (after the adoption of Vaccine Rule 36, ruling that the court could review a special master's grant of relief from a judgment).

4

consider the pending petition for review.[3]  Notably, any other result would be contrary to the statutory grant of authority to the court in the Vaccine Act to "issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded."  42 U.S.C. § 300aa-12(a).

## ANALYSIS

### I. *Whether the Time Limit is Mandatory*

Because the court possesses jurisdiction to hear petitioners' motion for review, the salient question becomes whether the 90-day time period for remand set forth in Subparagraph 300aa-12(e)(2)(C) is mandatory, and not merely a time-related directive.  The statutory provision states in terse terms that "[t]he court may allow not more than 90 days for remands."  42 U.S.C. § 300aa-12(e)(2)(C).  Petitioners argue that this time limitation is absolute, and  "[t]o interpret the Act in any other way . . . would absolutely eviscerate the plain language of the Act itself." Hr'g Tr. 5:14-17.  The government contends that the statutory language is merely a "time-related directive" that is not mandatory because the Act does not specify any consequences for contravening the 90-day deadline.  Hr'g Tr. 21:8 to 22:10.

The Supreme Court has observed that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993).  This reluctance to imply a penalty where Congress has not explicitly included one stems from "'the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.'"  *St. Regis Mohawk Tribe, New York v. Brock*, 769 F.2d 37, 42 (2d Cir. 1985) (Friendly, J.) (quoting *United States v. Nashville, C. & St. L. Ry.*, 118 U.S. 120, 125 (1886), and citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132 (1938); *Stanley v. Schwalby*, 147 U.S. 508, 515 (1893); and *United States v. Thompson*, 98 U.S. 486, 489 (1878)).[4]

In applying this principle, the Supreme Court has declined to find that an agency's failure to comply with a procedural deadline divested the agency of jurisdiction where the statute that contained the deadline did not also include a consequence for failure to act within the specified time.  *See Brock v. Pierce Cnty.*, 476 U.S. 253, 259 (1986).  There, the Court noted that when "there are less drastic remedies available for failure to meet a statutory deadline," such as an

---

[3]Respondent's counsel indeed conceded that "this [c]ourt sits as a supervisory court over these matters."  Hr'g Tr. 29:10-11.  The dispute between the parties effectively is over the relief requested, not juridical power.  As respondent's counsel put it, "at the end of the day, we do agree with petitioner that the Court of Federal Claims has that oversight over the Special Masters, but the type of relief that [p]etitioners request here, which is a decision, is not justified by the circumstances in this case."  Hr'g Tr. 29:11-16.

[4]In *St. Regis Mohawk Tribe*, Judge Friendly noted that the principle traces at least as far back as *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511 (1871).  *See St. Regis Mohawk Tribe*, 769 F.2d at 41 n.4.

5

action under the Administrative Procedure Act ("APA") to compel agency action unlawfully withheld or unreasonably delayed, "courts should not assume that Congress intended the agency to lose its power to act." *Id.* at 260 & n.7; *see* 5 U.S.C. § 706(1); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) ("Nor, since *Brock*, have we ever construed a provision that the [g]overnment 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later.").

Similarly, in *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), the Supreme Court relied on the general principle to interpret a section of the Bail Reform Act, Pub. L. 98-473, 98 Stat. 1976 (1984) (codified at 18 U.S.C. § 3142). The portion of the Act states: "The judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [a detainee]. . . . The hearing *shall be held immediately* upon the person's first appearance before the judicial officer unless that person, or the attorney for the [g]overnment, seeks a continuance." 18 U.S.C. § 3142(f) (formerly 18 U.S.C. § 3142(e)) (emphasis added). The Court held that "the word 'shall' in the Act's hearing time requirement does not operate to bar all authority to seek pretrial detention once the time limit has passed. Although the duty is mandatory, the sanction for breach is not loss of all later powers to act." *Montalvo-Murillo*, 495 U.S. at 718. As the Court explained, "We do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the [g]overnment into complying with the statutory time limits," noting that the "district court, the court of appeals, and [the Supreme Court] remain open to order immediate release of anyone detained in violation of [substantive provisions of] the statute." *Id.* at 721.

In several different statutory contexts, the Federal Circuit has provided an exhaustive analysis of this principle. *See, e.g., Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011); *Gilda Indus., Inc. v. United States*, 622 F.3d 1358 (Fed. Cir. 2010); *Liesegang v. Secretary of Veterans Affairs*, 312 F.3d 1368 (Fed. Cir. 2002). In doing so, it has determined "that when Congress intends there to be consequences for noncompliance with statutory deadlines for government action, it says so expressly." *Hitachi*, 661 F.3d at 1347; *see also Gilda Indus.*, 622 F.3d at 1365 ("[A]bsence of a consequence indicates . . . that [a subsection] is a directory provision and not 'mandatory.'"). Accordingly, the Federal Circuit determined that a statute stating that a "customs officer, within two years from the date a protest was filed . . . , shall review the protest and shall allow or deny such protest in whole or in part," 19 U.S.C. 1515(a), was merely directory and "[was] not enough to impose a specific penalty for noncompliance" with the time directive, *Hitachi*, 661 F.3d at 1348.

Like the statutes in the aforementioned cases, the Vaccine Act does not specify a consequence for a special master's failure to decide a case within 90 days of a remand issued by this court. *See* 42 U.S.C. § 300aa-12(e)(2)(C). This terse deadline standing alone contrasts with a provision contained within the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-09, another statute familiar to this court. The CDA provides that a "contracting officer shall issue a decision on any submitted claim of $100,000 or less within 60 days from the contracting officer's receipt of a written request from the contractor that a decision be rendered within that period," while a "contracting officer shall, within 60 days of receipt of a submitted certified claim over $100,000 -- (A) issue a decision; or (B) notify the contractor of the time within which a decision will be issued." 41 U.S.C. § 7103(f)(1), (2). The statute proceeds to state that "[f]ailure by a contracting

officer to issue a decision on a claim within the required time period is deemed to be a decision by the contracting officer denying the claim and authorizes an appeal or action on the claim as otherwise provided in this chapter." *Id.* § 7103(f)(5). There is no corollary to this direction in the Vaccine Act,[5] and no provision contained within the Act supports petitioners' contention that this court must, upon a motion for review made after the 90-day time period for remand has elapsed, exercise jurisdiction and enter its own entitlement determination. *See* H'rg Tr. 7:8 to 8:3.[6] In light of the great weight of Supreme Court and Federal Circuit precedent, the court declines to read such a consequence into the Act.

## II. *The Nature of Another Available Remedy*

The court recognizes, as the Supreme Court did in *Brock*, that alternate avenues of relief should be available when an agency or judicial body delays in taking action. *See Brock*, 476 U.S. at 260. What these remedies, in the context of the Vaccine Act, might entail is a question of first impression for the court; however, potentially analogous sources of law are instructive in determining the contours of the redress available when a special master's decision is unreasonably delayed. As noted previously, under the APA, a reviewing court has the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). When considering whether an agency's delay is unreasonable, courts look to several indicia. "The first and most important factor is that 'the time agencies take to make decisions must be governed by a "rule of reason."'" *In re Core Commc'ns., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Research and Action Ctr. v. Federal Commc'ns. Comm'n* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)). The others are:

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less

---

[5]The government argues that the Vaccine Act is structured such that petitioners' only remedy is contained within Subsections 300aa-12(g) and 300aa-21(b). Hr'g Tr. 14:18-19, 26:13-19. Those provisions allow petitioners to file notice of withdrawal of a petition if a special master fails to render a decision within the 240 days prescribed by the Vaccine Act or if the Court of Federal Claims fails to enter a judgment on the petition within 420 days after the date on which the petition was filed. If the petitioner files such a notice to withdraw, the petitioner preserves his or her right to file a civil action against a vaccine manufacturer or administrator. *See* 42 U.S.C. § 300aa-11(a)(2)(A)(ii). The government's reliance on these provisions is misplaced. The cited provisions do not pertain to action by special masters on remand, and they also are purely permissive on the part of petitioners.

[6]The court recognizes it may be difficult for the special masters consistently to comply with the 90-day directive in the statute. *Cf. Wolfchild v. United States*, 108 Fed. Cl. 578, 585-86 (2013) (recognizing the Department of the Interior's "concern about completing its assigned task in a period of potentially limited budgetary resources" and granting the Department an extension of time to comply with a court order which had mandated completion of the Department's task of formulating a distribution plan for plaintiffs within one year, as a statute contemplated).

tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotations omitted); *see also Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997).

Courts have cautioned that a "rule of reason" connotes a fact-intensive "issue [that] cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Thus, in *Mashpee*, the court of appeals determined that the district court had erred in finding that the Bureau of Indian Affairs had delayed unreasonably in issuing a decision on a petition for federal tribal recognizance that had been filed nearly six years earlier, because it did not consider "competing priorities" and the Bureau's limited resources. *Id.* at 1101-02.[7] When a court does consider the totality of the circumstances, however, unreasonable delay may be found. In *Core Communications*, the court found that the Federal Communications Commission had unreasonably delayed action when it did not respond within six years to the court's remand ordering the Commission to articulate a valid legal justification for its rules governing intercarrier compensation for telecommunications traffic bound for Internet service providers. *Core Commc'ns*, 531 F.3d at 857-58, 861-62. In doing so, the court noted the time period of the delay was "anything but reasonable" and that the petitioner had been prejudiced by the delay. *Id.* at 857-58.

A similar path exists to allow for the correction of unreasonable delay within the judicial branch. Pursuant to the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Thus, courts of appeal have jurisdiction to issue a writ of mandamus compelling action by a trial court. *See In re Baldwin*, 700 F.3d 122, 126 (3d Cir. 2012). Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. United States Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). To demonstrate that such relief is appropriate, "a petitioner must establish that he or she has 'no other adequate means' to obtain the relief requested, and that he or she has a 'clear and indisputable' right to issuance of the writ." *In re Thomas*, 438 Fed. Appx. 137, 138 (3d Cir. 2011) (quoting *Madden v.*

---

[7]In *Mashpee*, although the Second Circuit reversed the district court's finding of unreasonable delay and remanded the case, the court of appeals "noted[d] that, if the district court is unable to conclude that the delay to date is unreasonable, then it may nevertheless retain jurisdiction over the case to monitor the agency's assurances that it is proceeding as diligently as possible with the resources available to it." 336 F.3d at 1102.

*Myers*, 102 F.3d 74, 79 (3d Cir. 1996), *superseded in part by* 3d Cir. LAR 24.1(c) (1997) (altering prisoner-account-statement procedure described in footnote 6 of *Madden* )); *see also Cheney*, 542 U.S. at 380-81. Although lower courts generally have discretion with regard to their dockets, "an appellate court may issue a writ of mandamus when an undue delay in adjudication is 'tantamount to a failure to exercise jurisdiction.'" *In re Thomas*, 438 Fed. Appx. at 138 (quoting *Madden*, 102 F.3d at 79). For instance, a court of appeals issued a writ of mandamus commanding a district court judge to act on a habeas corpus petition when the district judge had "defer[red] action in petitioner's habeas corpus case and in twenty-five other habeas corpus actions pending before him[] to await a ruling by the Supreme Court in another case which he does not even cite." *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970). Another court of appeals found that a "fourteen-month delay in [a decision on a petition for a writ of habeas corpus] for no reason other than docket congestion [was] impermissible" and issued a writ of mandamus commanding the district court to decide the petition within 60 days. *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990); *cf. Madden*, 102 F.3d at 79 (refusing to issue a writ of mandamus because a district court's delay of more than three months in responding to a habeas petition was "of concern, [but] it [did] not yet rise to the level of a denial of due process").

Petitions for writs of habeas corpus ask for relief from unlawful detention, and the relevant statute states that courts hearing such petitions "shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Contrastingly, writs of mandamus to compel action on filings other than habeas petitions allow significantly more time for lower courts to issue decisions, often finding that a district court's inaction for more than a year after filing does not warrant mandamus relief. *See In re Mitchell*, 340 Fed. Appx. 787, 788 (3d Cir. 2009) (finding "no delay that would constitute an exceptional circumstance" when actions were filed more than a year prior to petitioner's mandamus request).

Under the All Writs Act, 28 U.S.C. § 1651, this court has the power to issue a writ of mandamus as necessary or appropriate in aid of its jurisdiction under the Vaccine Act. *See Phillips-Deloatch v. Secretary of Health and Human Servs.*, 104 Fed. Cl. 223, 225 (2012) ("This court, of course, was established by an Act of Congress and thus may issue writs of mandamus in aid of its jurisdiction under the Vaccine Act."); *see also Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (holding that Article I courts have the authority to issue writs of mandamus); *Branning v. United States*, 11 Cl. Ct. 136, 138-39 (1986) ("This court is, of course, a court established by act of Congress; and, accordingly, this court is authorized to issue such writs as may be necessary or appropriate in aid of its jurisdiction."). As discussed *supra*, mandamus is an extraordinary remedy that can be issued when a lower court engages in undue delay, but only when that delay is tantamount to a failure to exercise jurisdiction or extraordinary circumstances are evident. *See In re Thomas*, 438 Fed. Appx. at 138 (quoting *Madden*, 102 F.3d at 79).

In this instance, the case before the special master is complex, and although there is a voluminous record, the court previously had concluded that on that record, it "is medically and scientifically uncertain whether developmental progress or regress is a valid measure to assess the pre-vaccination condition of a very young child with [petitioners' minor child's] type of mitochondrial defect, or whether another indicator should be employed." *Paluck II*, 104 Fed. Cl. at 469. On remand, the special master asked the parties to further brief and report on related

9

issues, activities that both parties agree did not conclude until September 2012. *See* Pet'rs' Mot. at 3; Resp't's Opp'n at 4. Approximately seven months have passed, then, since the special master acquired information pertinent to the resolution of the case. This court would be loathe to consider such a passage of time as undue delay tantamount to a failure to exercise jurisdiction on the part of the special master.

Although this court does not deem the special master to have engaged in undue delay, it notes that the Federal Circuit has recognized the need for speedy disposition when a case has been in contest for many years and a party's health is quickly failing. *See Dambach v. Gober*, 223 F.3d 1376 (Fed. Cir. 2000). In *Dambach*, a veteran's claim for benefits had "been in contest for more than seven years" at the Board of Veterans' Appeals, the Court of Appeals for Veterans Claims, and the Federal Circuit. *See Dambach*, 223 F.3d at 1381. There, the Federal Circuit stated "it would be appropriate for the Veterans Court to set a deadline by which this veteran's case will be concluded" in light of the length of the contest and "the fact that [Dambach's] health is very poor." *Id.* In another instance, the Court of Appeals for Veterans Claims recognized that an expedited decision from the Board of Veterans' Appeals might be warranted because of petitioner's advanced age and frail health. *See Thompson v. Principi*, No. 02-291, 2002 WL 445057 (Ct. Vet. App. Mar. 14, 2002).[8] According to counsel for petitioners, the petitioners' minor child, Karl Paluck, is in dire health. There is a "do not resuscitate order now in place" for him, and "[h]e is bedridden or wheelchair-ridden[,] has a tracheostomy tube[,] and is on a ventilator to breathe for him." H'rg Tr. 34:20-22, 35:12-14. In addition, this case has been in contest for six and one-half years. The totality of these circumstances supports prompt completion of the remand ordered by this court more than a year ago. Thus, this court will extend the time for completion of the remand by 120 days from the date of the issue of this order and opinion, but no more.

**CONCLUSION**

Although petitioners' motion for review is DENIED, the special master is instructed to issue a decision on their entitlement claims not more than 120 days from the date of this order and opinion.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[8]The Board issued a decision thirteen days after the first decision of the Court of Appeals for Veterans Claims, mooting the need for such a deadline. *Thompson v. Principi*, 18 Vet. App. 81 (Ct. Vet. App. 2002).